**LEAR et al., Appellants,**

v.

**HARTZELL HARDWOODS, INC., Appellee.**

[Cite as *Lear v. Hartzell Hardwoods, Inc.*, 160 Ohio App.3d 478, 2005-Ohio-1907.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 2004–CA–33.

Decided April 15, 2005.

</div>

Richard W. Schulte, for appellants.

Samuel M. Pipino, for appellee.

FAIN, Judge.

{¶ 1} Plaintiffs-appellants, Kevin Lear, his wife, Nancy Jo Lear, and their minor children, Jeremy and Jordan Lear, appeal from a summary judgment rendered in favor of defendant-appellee, Hartzell Hardwoods, Inc., on the Lears' employer-intentional-tort claim. The Lears contend that the trial court erred in rendering summary judgment in favor of Hartzell, because there is a genuine issue of material fact whether Hartzell knew that requiring Lear to perform of a job on the roof of a Hartzell building without certain fall-protection equipment was substantially certain to result in harm. We agree.

{¶ 2} We conclude that when the evidence submitted is viewed in a light most favorable to the Lears, a reasonable trier of fact could find that Hartzell knew that harm was substantially certain to occur to Lear while working on the roof project in the absence of fall-protection equipment. Accordingly, we conclude that there is a genuine issue of material fact whether Hartzell failed to make fall-protection equipment available to Lear while performing the roofing job, thereby precluding summary judgment in Hartzell's favor.

{¶ 3} The judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

I

{¶ 4} Kevin Lear, a maintenance supervisor employed at Hartzell Hardwoods, Inc., met with his supervisor, Beachel "Slim" Swafford, on a daily basis to discuss an ongoing list of maintenance tasks to be performed. On several occasions, Swafford instructed Lear to affix metal sheets over fiberglass skylights to prevent water leakage onto lumber located underneath the skylights in one of Hartzell's buildings. In February 2002, Lear and two maintenance crew employees, Tony Arnett and Gary Sage, used a ladder to get to the roof of the building and a tow motor to lift the metal sheets to the roof of the building. Lear, Arnett, and Sage did not wear fall-protection devices while on the roof. While Lear and Arnett were attempting to place a metal sheet over the skylight on the roof, Lear fell through the skylight, approximately 20 feet, to a concrete floor. Lear suffered severe injuries.

{¶ 5} The Occupational Safety and Health Administration ("OSHA") had issued "serious" citations to Hartzell for incidents occurring in January 2002, in which Hartzell failed to provide employees with fall-protection devices where necessary to prevent falling through openings while working at heights greater than 15 feet from the ground. After the OSHA citations were issued, Hartzell borrowed two lanyards, a type of fall-protection device, from Lavy Concrete Company, and the lanyards were placed at a large lumber-handling machine located inside the

building. Sage also loaned Hartzell two of his lanyards. Lear, Arnett, and Sage received safety training on the use of the lanyards by a Lavy employee in January 2002. Lear, Arnett, and Sage did not request the use of the lanyards to perform the maintenance task on the roof in February 2002.

{¶ 6} In July 2003, the Lears filed a complaint against Hartzell, asserting a cause of action for employer intentional tort. Hartzell filed a motion for summary judgment. The trial court granted Hartzell's motion for summary judgment. The trial court found that although there is a genuine issue of material fact whether Hartzell knew that Lear's work on the roof constituted a dangerous process, procedure, instrumentality, or condition, there is no genuine issue of material fact whether Hartzell knew that the job was so dangerous that performing the job was substantially certain to result in harm. The trial court found that harm was not substantially certain to occur, because Lear was an experienced maintenance supervisor performing a short assignment on a low-pitched roof in good weather. From the summary judgment rendered against them, the Lears appeal.

## II

{¶ 7} The Lears' sole assignment of error is as follows:

{¶ 8} "The trial court erred by granting summary judgment in favor of the defendant upon plaintiffs' employer intentional tort claim when it erroneously found that there was no question of fact as to the second element of the *Fyffe* test."

{¶ 9} The Lears contend that the trial court erred in rendering summary judgment in favor of Hartzel, because there is a genuine issue of material fact whether Hartzell knew that requiring Lear to perform the job on the roof without allowing him to use fall-protection equipment was substantially certain to result in harm.

{¶ 10} We review the appropriateness of summary judgment de novo and follow the standards as set forth in Civ.R. 56. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201.

{¶ 11} The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists on the essential elements of the nonmoving

party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The moving party's initial burden is not discharged by making mere conclusory assertions, but must be based on some evidence demonstrating that the nonmoving party has no evidence to support its claims. Id. Summary judgment must be denied if the moving party fails to satisfy its initial burden. Id. If the moving party satisfies its initial burden, the nonmoving party has a reciprocal burden of setting forth specific facts demonstrating that a genuine issue of material fact exists to prevent summary judgment. Id. The nonmoving party may not rest on mere allegations or denials of his pleadings. Id. Summary judgment is appropriate if the nonmoving party fails to satisfy this burden. Id.

{¶ 12} To establish "intent" for the purpose of proving that an intentional tort was committed by an employer, an employee must demonstrate "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.

{¶ 13} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent." Id., paragraph two of the syllabus.

{¶ 14} In granting Hartzell's motion for summary judgment, the trial court found that there is a genuine issue of material fact as to the first prong of the *Fyffe* test, regarding whether Hartzell knew that Lear's work on the roof constituted a dangerous process, procedure, instrumentality, or condition but found that there is no genuine issue of material fact as to the second prong of the *Fyffe* test, regarding whether Hartzell knew that Lear's performance of the job on the roof was substantially certain to result in harm.

{¶ 15} Whether harm is substantially certain to occur depends on the probability of its occurrence. *Busch v. Unibilt Industries, Inc.*, Montgomery App. No. 18175, 2000 WL 1369891, at *3. We have previously stated that "[a]n event is certain if it is inevitable; that is, given to and marked by complete assurance and conviction. In human affairs, only death satisfies that test. Thus, and for these purposes, the harm involved must have been a 'substantial certainty.' When used as an adjective, *substantial* means that which is specified to a large degree or in the main." Id., citing Webster's Third New International Dictionary (1986).

{¶ 16} "So long as the Earth rotates on its axis, the law of gravity is certain. While the law of gravity prevails, it is also certain that an unsupported object will fall until its travel is interrupted by some object or surface below. When the falling object is a human being, harm resulting from the fall is a substantial certainty, depending on (1) the height from which the fall takes place and (2) the hazard presented by the surface or objects below." *Busch*, 2000 WL 1369891, at *3.

{¶ 17} In *Busch*, an employee fell while working from a height of approximately eight feet from the ground and sustained injuries. *Busch*, 2000 WL 1369891, at *1. The employer failed to provide a safety harness for employees working at those heights. Id. Although the facts in *Busch* included a few prior, similar falls, we noted that "[o]ther courts have held that the harm resulting from a fall is a substantial certainty because of the very nature of the causes which produce a fall, the lack of prior experience notwithstanding." Id. at *4. As in those cases, Lear was assigned by his employer to a task that put him at a direct risk of harm from falling from an elevated height. See id. at *4. This is a risk from which a reasonable mind could find that resulting harm is a substantial certainty, not just a matter of high risk. Id.

{¶ 18} In addition, "[w]here an employer has removed a safety device that might have prevented an injury, courts may consider that fact in determining motions for summary judgment on employee intentional tort claims." *Busch*, 2000 WL 1369891, at *3, citing *Fyffe*, 59 Ohio St.3d 115, 570 N.E.2d 1108. Here, the evidence, when viewed in a light most favorable to Lear, would permit a reasonable mind to find that Hartzell refused to allow its employees, including Lear, to use the safety device of fall protection, present at the job site.[1] This had the same effect as removing the safety device; in either event, the safety device

---

1. Hartzell disputed this contention of fact. Hartzell contended that it had not refused its employees permission to use the fall-protection equipment. Because reasonable minds could reach different conclusions of fact on this issue, for purposes of determining the propriety of summary judgment, we must take Lear's version of fact to be correct.

would not be available to the employee, as a result of a decision by the employer that it should not be available.

{¶ 19} Lear contends that Hartzell knew that harm to Lear was substantially certain to occur when it required him to perform the roof project at a great height without fall protection, which Hartzell failed to make available to him. In his deposition, Lear testified that although he did not ask to use a fall-protection device on the day of the accident, he had been previously informed that the fall-protection devices were available only for use at the lumber-handling machine. Lear testified that he had to sign off on a sheet, entitled "Fall Protection Plan," indicating when he used fall-protection, but that the sheets were only filled out at the lumber-handling machine. Lear testified that the sheets were filled out only at the machine because that was where the fall-protection equipment was located and because that was the only place the fall-protection equipment was allowed to be used, due to the prior OSHA citations for not having fall-protection at the machine. Lear testified that Swafford, his supervisor, told him that he could not use the fall-protection equipment anywhere but at the lumber-handling machine. Lear testified, "He told me that when I had the safety harnesses in our maintenance truck and we were going to use them for another job. The machine broke down, and they needed the harnesses, and we were told that those damn harnesses stayed at the machine." Lear testified that he had discussed Swafford's comments with Gary Sage and Tony Arnett as well as with Hartzell's safety directory, Sam Shaw, prior to his accident. Lear testified that Shaw had told him, "[O]ne of these days, Hartzell is going to get somebody hurt around here."

{¶ 20} Lear also testified that Swafford assigned the roof project in October 2002 and continued thereafter to pressure Lear to get the project done. Lear testified that he had told Swafford, "I didn't want to do it until I knew we were going to be safe up there." Lear testified that Swafford had wanted the job done before there was more snow and that Swafford had told him that "if that lumber [got] wet, John Owsiany [was] going to have somebody's ass and it wasn't going to be his." Lear testified that he had taken that to mean that "if it didn't get done, I was going to be in trouble."

{¶ 21} Lear attached the affidavit of James Zucchero, a president of an occupational safety and health consulting firm, in support of his response to Hartzell's motion for summary judgment. Zucchero averred that after reviewing the depositions of Lear, Sage, Arnett, and Swafford, he believe that fall-protection devices were available in the facility, but that Lear and Arnett indicated that the fall-protection devices could not be used to complete the roofing job. Zucchero averred that failure to provide fall protection to Lear constituted a dangerous workplace condition. Zucchero averred that "the cir-

cumstances under which Kevin Lear, as an employee performing a maintenance task, performed the job that led to his fall constituted a dangerous condition that was substantially certain to cause injury."

{¶ 22} Hartzell contends that it did not know that harm to Lear was substantially certain to occur, because Lear determined the means and manner of performing the job on the roof and unilaterally chose not to use the fall-protection equipment, which was available to him. Hartzell attached the affidavit of Gary Sage to its motion for summary judgment. In his affidavit, Sage averred that fall-protection equipment was available at Hartzell and that it was used in other areas of the facility besides the machine. In his deposition, Sage testified that fall protection was not used during the roof project and that using fall protection for the project was not discussed. Sage testified that he did not recall whether Swafford had told him that the lanyards were to stay at the machine. He testified that neither Lear nor Arnett had told him that Swafford said that they could not use the lanyards for the roof project.

{¶ 23} Hartzell also offered the affidavit of Sam Shaw. Because Hartzell submitted Shaw's affidavit for the first time on appeal, we grant the Lears' motion to strike the affidavit of Sam Shaw and will not consider it in this appeal.

{¶ 24} We conclude that a trier of fact could find that Hartzell knew that harm was substantially certain to occur to Lear while working on the roof project in the absence of fall-protection equipment. The evidence shows that Hartzell knew that fall-protection devices were required for heights greater than 15 feet, based on the citations issued by OSHA for Hartzell's failure to provide employees with fall-protection devices where necessary to prevent falling through openings while working at heights greater than 15 feet from the ground. Lear's assignment required him to work on a roof at a height of approximately 20 feet. The issue is whether Hartzell made fall-protection equipment available to Lear while he performed the project on the roof. After reviewing the depositions and affidavits in the record, we conclude that there is a genuine issue of material fact whether Hartzell failed to make fall-protection equipment available to Lear to perform the roofing job.

{¶ 25} We conclude that the trial court erred in rendering summary judgment in favor of Hartzell, because there is a genuine issue of material fact whether Hartzell required Lear to perform the job on the roof without using fall-protection equipment available at the job site, knowing that harm was substantially certain to result.

{¶ 26} The Lears' sole assignment of error is sustained.

## III

{¶ 27} The Lears' sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

WOLFF and DONOVAN, JJ., concur.