OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiff-Appellant, Kevin Hubert, appeals the decision of the Columbiana County Court of Common Pleas that granted summary judgment to Defendant-Appellee, Al Hissom Roofing and Construction, Inc. Hubert argues there are genuine issues of material fact on each element of his employer intentional tort claim against Al Hissom Roofing.
 {¶ 2} In order to prevail in a claim for an employer intentional tort, the plaintiff must prove three elements: 1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and, (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
 {¶ 3} In this case, Hubert has failed to produce any evidence showing either that Al Hissom Roofing knew of the conditions in the workplace which make the work more dangerous than the dangers necessarily incident to roofing or that Al Hissom Roofing knew with substantial certainty that Hubert would be injured if exposed to those dangerous conditions. Accordingly, the trial court's decision granting summary judgment to Al Hissom Roofing is affirmed.
 Facts {¶ 4} On February 14, 2002, Hubert was employed with Al Hissom Roofing. On that day, Hubert went with two other Al Hissom Roofing employees, Harold Earich and Henry Keenan, to a jobsite to work on a home that Al Hissom Roofing was helping to construct. The job they were performing required them to work on scaffolding erected more than twenty feet above the ground. Earich and Keenan installed that scaffolding about two weeks before February 14th.
 {¶ 5} The scaffolding Earich and Keenan erected was a combination of "wall jacks" and "picks." A wall jack is a metal frame that can be attached to a building's studs with large nails. A pick is a wooden board placed upon the jacks. The wall jacks owned by Al Hissom Roofing had four holes to place nails through, but Earich and Keenan only used two nails to secure the wall jacks to the wall.
 {¶ 6} On February 14th, the three employees arrived at the worksite without safety harnesses. Those harnesses were available at Al Hissom Roofing's shop, but employees were only required to wear the harnesses when working on commercial buildings. Since this building was a residential building, these employees exercised their discretion and did not bring those harnesses to the worksite.
 {¶ 7} Upon arriving at the worksite, Earich climbed onto the scaffolding and jumped on it at each wall jack. He then checked to make sure that they were still secured to the wall. After ensuring that the nails had not pulled out, he, Hubert, and Keenan proceeded to work on the building. Soon after all three of them began to work, the scaffolding gave way without warning and they dropped more than twenty feet to the ground. Hubert suffered severe injuries as a result of his fall.
 {¶ 8} Hubert filed a complaint against Al Hissom Roofing which alleged employer intentional torts. After discovery, Al Hissom Roofing moved for summary judgment, arguing that Hubert could not establish the elements of an employer intentional tort. Al Hissom Roofing's motion relied on the following four depositions: those of Hubert; Earich; Samuel Mecum, one of Al Hissom Roofing's other employees; and Mark Hissom, the owner of Al Hissom Roofing. Hubert responded, but the trial court entered summary judgment on behalf of Al Hissom Roofing. It concluded that Hubert failed to establish that there was a genuine issue of material fact regarding whether Al Hissom Roofing knew with substantial certainty that Hubert would be injured when working on the scaffolding.
 Standard of Review {¶ 9} Hubert's sole assignment of error argues:
 {¶ 10} "Whether the lower court erred by granting summary judgment in favor of the Appellee as to Appellant's employer intentional tort claim when the lower court found there was no genuine issue of material fact as to whether Appellee knew with substantial certainty that Appellant would be harmed when it required its employee to work on a wall jack scaffolding 20 feet or more in the air without safety training or fall protection."
 {¶ 11} When reviewing a trial court's decision to grant summary judgment, this court applies the same standard as the trial court and, therefore, engages in a de novo review. Parentiv. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Doe v.Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-0186.
 {¶ 12} In a motion for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresherv. Burt, 75 Ohio St.3d 280, 296, 1996-Ohio-0107. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. "In order to overcome an employer-defendant's motion for summary judgment on an intentional tort claim, the plaintiff must set forth specific facts showing there is a genuine issue as to whether the employer committed an intentional tort." Burgos v.Areway, Inc. (1996), 114 Ohio App.3d 380, 383.
 Employer Intentional Tort {¶ 13} Hubert claims that he should be able to recover against Al Hissom Roofing since it intentionally injured him. While Ohio's workers' compensation provisions provide employees with the primary means of compensation for injury suffered in the scope of employment, an employee may institute a tort action against the employer when the employer's conduct is sufficiently "egregious" to constitute an intentional tort. Sanek v. DuracoteCorp. (1989), 43 Ohio St.3d 169, 172. When an employer's conduct is sufficiently egregious to constitute an intentional tort, the employer's act occurs outside the scope of employment and, thus, the employee's recovery is not limited to the workers' compensation provisions. Blankenship v. Cincinnati MilacronChemicals, Inc. (1982), 69 Ohio St.2d 608, 613, footnote 7. In order to recover against an employer for an intentional tort, an employee must prove the three elements the Ohio Supreme Court described in Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115.
 {¶ 14} "[I]n order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Id. at paragraph one of the syllabus.
 {¶ 15} The primary concern in any case where an employee is claiming his employer committed an intentional tort against him is whether the employer, "through its policies and conditions of employment, placed [the employee] in a position where he was subjected to a `dangerous process, procedure, instrumentality or condition' and harm was substantially certain to follow." Gibsonv. Drainage Products, Inc., 95 Ohio St.3d 171, 2002-Ohio-2008, ¶27. "[I]f the injured employee fails to present sufficient evidence to support any one of the three requirements, summary judgment in favor of the employer is appropriate." Hunter v.Interpak, Inc., 11th Dist. No. 2001-L-198, 2002-Ohio-7149, ¶ 14.
 Knowledge of a Dangerous Condition {¶ 16} Hubert argues there is a genuine issue of material fact regarding whether Al Hissom Roofing knew of a dangerous condition. According to Hubert, people in the roofing industry are routinely required to work at heights of more than twenty feet from the ground and that working at these heights is inherently dangerous since a fall from that height could easily result in serious injury.
 {¶ 17} In response, Al Hissom Roofing argues that Hubert is merely complaining that his work is dangerous, not that there was a dangerous condition within his work environment. Furthermore, Al Hissom Roofing argues that it did not know of a dangerous condition, even if one actually existed.
 {¶ 18} In order to satisfy the first prong of the Fyffe
test, the plaintiff must show there was a dangerous process and the employer had actual knowledge of the consequences of the exact dangers which ultimately caused the injury. Gibson at ¶ 28; Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169, 172;Dailey v. Eaton Corp., 138 Ohio App.3d 575, 582, 2000-Ohio-1754. "`[D]angerous work must be distinguished from an otherwise dangerous condition within that work. It is the latter of which that must be within the knowledge of the employer before liability could attach.'" Dailey at 582, quoting Naragon v.Dayton Power Light Co. (Mar. 30, 1998), 3rd Dist. No. 17-97-21. Injuries that occur in the scope of employment are, by definition, not intentional torts. Id.
 {¶ 19} The mere fact that defendant's process involved the existence of dangers does not automatically classify defendant's acts or omissions as an intentional tort, even if management failed to take corrective actions or institute safety measures.Shelton v. U.S. Steel. Corp. (S.D.Ohio, 1989), 710 F.Supp. 206,210. Some dangers may "fairly be viewed as a fact of life of industrial employment" and an employer has not committed an intentional tort when an employee is injured by one of those dangers. Van Fossen v. Babcock Wilcox Co. (1989),36 Ohio St.3d 100, 116. A dangerous condition exists when the danger "falls outside the `natural hazards of employment,' which one assumes have been taken into consideration by employers when promulgating safety regulations and procedures." Youngbird v.Whirlpool Corp. (1994), 99 Ohio App.3d 740, 747.
 {¶ 20} "[M]any employment situations involve obvious dangers incident to employment and that the purpose of the Workers' Compensation Act is to provide an employee with compensation for injury suffered by reason of a danger necessarily incident to his employment. An intentional tort action, conversely, allows an employee to recover for injuries suffered that are not caused by a danger necessarily incident to his employment. For example, operating dangerous machinery may be a necessary incident of an employment situation, but operating that dangerous machinery without proper safety mechanisms may not constitute a necessary incident of the employment. See Fyffe. In the former case, recovery likely could be had under the Workers' Compensation Act. In the latter case, recovery may be possible under the theory that the employer's conduct in failing to provide adequate safety mechanisms constituted an intentional tort." Goodin v. ColumbiaGas of Ohio, Inc. (2000), 141 Ohio App.3d 207, 216.
 {¶ 21} Thus, the scope of our inquiry must focus on whether Hubert presented evidence which could prove that this was an injury associated with inherently dangerous work outside the scope of his employment and Al Hissom Roofing had knowledge that the work was dangerous. Dailey at 582; Moebius v. Gen. MotorsCorp., 2nd Dist. No. 19147, 2002-Ohio-3918, ¶ 29; Long v.International Wire Group, Inc., 3rd Dist. No. 3-2000-11, 2000-Ohio-1751.
 {¶ 22} Hubert's argument, that there was a dangerous condition simply because he was working more than twenty feet above the ground, is meritless. The evidence in the record, as well as common sense, show that working at these heights is "a danger necessarily incident to his employment" as a roofer.Goodin at 216. Since dangers incident to employment cannot constitute the first element of an employer intentional tort, the fact that Al Hissom Roofing knew that Hubert was working more than twenty feet above the ground does not establish Fyffe's first prong.
 {¶ 23} Furthermore, Hubert has failed to produce any evidence that the management at Al Hissom Roofing had any idea that the wall jacks were secured by two nails, instead of four nails. Therefore, the fact that the wall jacks were not nailed properly does not meet Fyffe's first prong.
 {¶ 24} The Second District found a dangerous condition existed under circumstances which were somewhat similar to those in this case in Busch v. Unibilt Industries, Inc. (Sept. 22, 2000), 2nd Dist. No. 18175. In that case, the defendant was in the business of making manufactured homes. The plaintiff's job was to install plumbing and vents through the walls of those homes and into the attic space. This required him to work at a height of about eight feet above the factory floor. The plaintiff typically reached those locations by walking across exposed trusses of uncompleted floors.
 {¶ 25} The defendant installed a steel safety cable running above the units on which its employees worked. However, the defendant had not provided safety harnesses that workers could attach to the cable to save them from a fall. At best, the employees could only grasp the cable by hand to prevent a fall that might occur as they traversed the trusses of a roof. The plaintiff was injured when a truss broke underneath him and he was unable to grab the steel safety cable.
 {¶ 26} The appellate court found there was a genuine issue of material fact regarding Fyffe's first prong.
 {¶ 27} "The trial court held that Busch could not satisfy the first prong of Van Fossen, supra, `knowledge by the employer of a dangerous process, procedure, instrumentality, or condition,' because Unibilt had no knowledge of the inadequately nailed truss. We believe that applies the test too narrowly. The issue is whether the employer knew of the existence of a dangerous process, procedure, or condition within its business operation. That contemplates an industrial operation which the employer has consciously implemented, not merely a defect in that operation of which the employer is unaware.
 {¶ 28} Here, the relevant process, procedure, or condition is the scheme for construction that Unibilt adopted which required Busch and other employees to work at heights above the factory floor without the benefit of safety restraints. It was that lack of restraints that rendered the manufacturing process dangerous. It is undisputed that Unibilt had knowledge of that fact." Id. at 2-3.
 {¶ 29} As in Busch, the height that Hubert was working at is not the relevant danger; rather it is the conditions he was working at that height which may have created the dangerous condition. For instance, in each of these cases the employer provided the employee with the means of working at height without requiring that the employee use a safety harness when at that height. Thus, the lack of a safety harness when working more than twenty feet off the ground could be called a dangerous condition.
 {¶ 30} But even if this is a dangerous condition in the workplace, there is no evidence that Al Hissom Roofing knew that these employees were working without safety harnesses. Each of the witnesses testified that Al Hissom Roofing had safety harnesses available to anyone who wanted to use one and it was left to its employees' discretion whether they wanted to use those harnesses while working on residential buildings like the one in this case. This fact makes this case very different thanBusch since the employer in that case did not make safety harnesses available while the employer in this case did. Busch
is not persuasive authority in this case.
 {¶ 31} In this case, a dangerous condition clearly existed. Hubert was working without a safety harness on scaffolding more than twenty feet above the ground which was not properly secured. However, there is no evidence in the record showing that the management of Al Hissom Roofing knew of the conditions which made Hubert's work environment more dangerous that it needed to be. Thus, there are no facts showing that Al Hissom Roofing knew of a dangerous condition in Hubert's workplace.
 Substantial Certainty {¶ 32} The second prong of the Fyffe test requires that the plaintiff demonstrate that the employer was substantially certain that an employee would be injured if exposed to the dangerous condition. Of course, since Hubert has failed to demonstrate a genuine issue of material fact regarding whether Al Hissom Roofing knew of a dangerous condition in Hubert's workplace, it is difficult for him to demonstrate a genuine issue of material fact regarding Fyffe's second prong. However, even if we assume, for the sake of argument, that Hubert has demonstrated a genuine issue of material fact regarding Fyffe's first prong, he has failed to create a genuine issue of material fact regarding Fyffe's second prong.
 {¶ 33} Ohio's courts have recognized that Fyffe's second prong "is a difficult standard to meet." McGee v. GoodyearAtomic Corp. (1995), 103 Ohio App.3d 236, 246; Hunter at ¶ 19. As Fyffe stated at paragraph two of its syllabus, the employer's conduct must be more than negligent or reckless.
 {¶ 34} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Id.
 {¶ 35} Under the Fyffe test, if a dangerous condition is substantially certain to injure an employee, intent is inferred.Goodin v. Columbia Gas of Ohio, Inc. (2000),141 Ohio App.3d 207, 218, citing Harasyn v. Normandy Metals, Inc. (1990),49 Ohio St.3d 175. "Thus, the employee need not illustrate that the employer subjectively intended to `accomplish the consequences.'" Id. "What constitutes a `substantially certain' result will vary from case to case based on the facts involved." Richie v. RogersCartage Co. (1993), 89 Ohio App.3d 638. "An expert report stating that the accident was substantially certain to occur may not be sufficient to prevent summary judgment in favor of the employer on the employee's intentional tort claim." Burgos v.Areway, Inc. (1996), 114 Ohio App.3d 380, 384.
 {¶ 36} Hubert relies a great deal on Busch and Lear v.Hartzell Hardwoods, Inc., 160 Ohio App.3d 478, 2005-Ohio-1907, to argue that there was a substantial certainty of injury in this case. In Busch, there was evidence showing that falls similar to the fall that injured the plaintiff in that case repeatedly occurred and that people were harmed as a result of those falls.
 {¶ 37} Lear cites to and relied on Busch. In Lear, the plaintiff was working high above the ground without a safety device. Prior to the plaintiff's accident, he expressed concern about his safety to his supervisor and his employer's safety director told him that "[O]ne of these days, Hartzell is going to get somebody hurt around here." Id. at ¶ 19. Based on these facts, the Second District concluded that the trial court erred when granting summary judgment to the employer on this issue.
 {¶ 38} The portion of those cases which Hubert relies upon is a quote from Busch which was reproduced in Lear. When discussing whether the employers were substantially certain that an injury would result from the dangerous conditions in those cases, the Second District concluded as follows:
 {¶ 39} "So long as the Earth rotates on its axis, the law of gravity is certain. While the law of gravity prevails, it is also certain that an unsupported object will fall until its travel is interrupted by some object or surface below. When the falling object is a human being, harm resulting from the fall is a substantial certainty, depending on (1) the height from which the fall takes place and (2) the hazard presented by the surface or objects below." Busch at 3.
 {¶ 40} Hubert uses this quote to argue that an employee is substantially certain to be injured by working at height on a scaffolding without fall protection. But his argument ignores important facts in both Busch and Lear which showed that the employer appreciated the heightened danger of the risk in those cases. In Busch, there were a number of prior accidents which happened under similar circumstances, which tends to show that future accidents are a distinct possibility. In this case, there is only evidence of one prior accident where an Al Hissom Roofing employee fell. That accident occurred in 1979 and there is no evidence in the record that the circumstances surrounding that accident were similar to those surrounding this accident.
 {¶ 41} Likewise, one of the key facts in Lear, the admission by the employer's safety director prior to the accident that the employer was going to get someone hurt by forcing them to work in the dangerous condition in that case, is completely absent in this case. There is no evidence that anyone from Al Hissom Roofing believed that anyone would be injured by a fall. Indeed, more than one witness, including Hubert, testified that they did not want to wear a safety harness because they believed safety harnesses would create a tripping hazard.
 {¶ 42} This distinction makes this case somewhat like Kingv. Hancock Mfg. Co., Inc. (Dec. 14, 1999), 7th Dist. No. 97 JE 72. In that case, the plaintiff operated a machine called a Borden Can Former which ejected metal oil filter shells onto a ramp. At times, scrap metal would get caught in the machine and would need to be removed. The plaintiff's hand was crushed when he tried to remove that scrap metal.
 {¶ 43} On appeal, this court affirmed a decision granting summary judgment to the employer because, among other things, the plaintiff failed to demonstrate a genuine issue of material fact regarding Fyffe's second prong because the plaintiff knew how to avoid subjecting himself to the danger posed by the machine and intentionally decided not to avail himself of those procedures. In this case, Hubert knew about the safety harnesses Al Hissom Roofing had available, but chose not to use them. Hubert has provided no evidence tending to show that the harm would have been a substantial certainty if he had been wearing a safety harness.
 {¶ 44} Neither the fact that Hubert was working at height nor that he failed to wear a safety harness create a genuine issue regarding Fyffe's second prong. Hubert's arguments to the contrary are meritless.
 Conclusion {¶ 45} In this case, Hubert argues that his evidence overcomes Al Hissom Roofing's motion for summary judgment since he showed that he was working at a height on an improperly secured platform without a safety harness. However, the fact that he was working at height was a danger inherent to his job and does not, in and of itself, show a dangerous condition. Furthermore, Hubert has failed to produce any evidence showing that management at Al Hissom Roofing had any knowledge that the platform was improperly secured. Finally, it was Hubert's decision not to avail himself of a safety harness. These facts all prevent Hubert from demonstrating a genuine issue regarding whether he can prevail in his claim against Al Hissom Roofing. Accordingly, Hubert's sole assignment of error is meritless and the judgment of the trial court is affirmed.
Donofrio, P.J., concurs.
Vukovich, J., concurs.