OPINION
{¶ 1} Plaintiff-appellant, John Richardson, appeals from a judgment of the Butler County Court of Common Pleas, which entered summary judgment in favor of Pyramid Hill Sculpture Park on his intentional tort claim.
 {¶ 2} Richardson worked for Pyramid Hill as a groundskeeper. In this capacity, he spent several months putting up lights for a large holiday display. On November 7, 2001, Richardson was using a Genie 40-foot lift to put lights on trees when the boom tipped over, upending the lift. Richardson was seriously injured. He received workers compensation for *Page 2 
his injuries.
 {¶ 3} On July 19, 2004, Richardson filed a complaint alleging that Pyramid Hill had committed an intentional tort. He claimed that his injury had been substantially certain to occur because the lift was maintained in an inherently dangerous condition, the task was "substantially dangerous," and he had not received adequate training. Pyramid Hill denied these allegations in its answer, and it filed a motion for summary judgment.
 {¶ 4} On November 9, 2005, the trial court granted Pyramid Hill's motion for summary judgment, finding that Richardson had failed to establish the elements of an intentional tort as set forth in Fyffe v.Jeno's, Inc. (1991), 39 Ohio St.3d 115, paragraph one of the syllabus. Specifically, the court found that there was no evidence that Pyramid Hill had "`actual knowledge of the exact dangers causing harm' in this accident." The trial court rejected Richardson's argument that Pyramid Hill's failure to properly train Richardson constituted knowledge that he was being exposed to a dangerous process and that injury was a substantial certainty.
 {¶ 5} Richardson raises one assignment of error on appeal, challenging the trial court's decision to grant summary judgment on his intentional tort claim.
 {¶ 6} We review the appropriateness of summary judgment de novo and follow the standards set forth in Civ.R. 56. Koos v. Cent. OhioCellular, Inc. (1994), 94 Ohio App.3d 579, 588. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v.Mentor Soccer Club, Inc., 82 Ohio St.3d 367, 369-370, 1998-Ohio-389.
 {¶ 7} To establish "intent" for the purpose of proving that an intentional tort was *Page 3 
committed by an employer, an employee must demonstrate "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe, 59 Ohio St.3d at paragraph one of the syllabus;Lear v. Hartzell Hardwoods, Inc., 160 Ohio App.3d 478, 481-482,2005-Ohio-1907.
 {¶ 8} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Fyffe, 59 Ohio St.3d at paragraph two of the syllabus.
 {¶ 9} In its motion for summary judgment, Pyramid Hill relied on an affidavit from Richardson's boss, Harry Wilks. Wilks stated that neither Richardson nor anyone else had ever complained of problems with the lifts used to put up lights and that the lights had been put up in this way for years. He also stated that, to his knowledge, there had never been any problems with the lifts and that he had been unaware that a lift could fall over while being used for this purpose. He also testified that Richardson was "very experienced" with the operation of the lift from the previous year. Pyramid Hill had used lifts from Art's Rental *Page 4 
without incident for two or three years before the accident occurred. Wilks did not know what type of training Richardson had received on the operation of the lift, if any.
 {¶ 10} In response to the motion for summary judgment, Richardson offered his own deposition, a deposition from Wilks, the rental agreement for the lift, and expert testimony. In his deposition, Richardson stated that he was putting multi-colored lights on a tree when the accident occurred. He stated that he had parked the lift on an incline, but that he had used the lift and had seen it used by others in this manner without incident in the past. He recalled that he raised the boom to the left side of the tree in question, tied lights on, and then moved the boom to the right side of the tree, after which he could not recall what had happened. The next thing he remembered was being in the hospital. Wilks and some of Richardson's co-workers discovered him and the overturned lift after the accident; there were no witnesses.
 {¶ 11} Richardson further testified that he had operated a lift everyday for several months in 2000 to put up holiday lights at Pyramid Hill and for several weeks before the accident in 2001. When he first operated a lift the previous year, Richardson received some instruction from Gary Taxis, another Pyramid Hill employee, on how to operate the lift. This instruction focused on operating the control panels and moving the lift up and down, and it lasted five to eight minutes. According to Richardson, he and Taxis did not discuss the tilt alarm. Richardson also testified that he had heard a tilt alarm go off on another lift, but had never heard one on the lift he was using in 2001. He had assumed that the absence of a tilt alarm was attributable to the lift being an older model.
 {¶ 12} Richardson testified that Taxis never warned him about the danger associated with operating the lift on a slope. He noted that he and Taxis had operated lifts on slopes in the past, including the slope on which this accident occurred, without incident. Richardson testified that he had never experienced a problem with tipping before, that he had more *Page 5 
experience than his boss in the operation of the lift, that he had not received a lot of training but had been given "the basics," and that he had never felt "tippy" in the lift. Richardson stated that he had never seen a safety manual for the lift, did not know that a safety belt was recommended during usage, and did not know whether a safety belt had been available at Pyramid Hill. He testified that no one at Pyramid Hill wore a safety belt.
 {¶ 13} Richardson also presented evidence that Pyramid Hill was cited by OSHA for two safety violations related to his accident based on the lack of training and the failure to provide a safety belt. Further, he introduced the rental agreement from Art's Rental Company, which stated: "OSHA requires all personnell [sic] on lifts to wear a safety harness. * * * Caution! Use only on a solid, level surface. Under OSHA rules, it is the responsibility of the EMPLOYER to provide operator training for this equipment. Warning! Only qualified trained operators may use this equipment!!!" The agreement was signed by Gary Taxis.
 {¶ 14} Finally, Richardson presented expert testimony from an engineering instructor that use of a stick boom without proper training created a substantial certainty of injury.
 {¶ 15} In ruling on Pyramid Hill's motion for summary judgment, the trial court concluded that Richardson had failed to establish the first two prongs of the intentional tort standard set forth in Fyffe. The court found that there was no evidence that Pyramid Hill had actual knowledge of dangers posed by the lifts, having used them for two seasons without incident. The court rejected Richardson's argument that the failure to train was tantamount to actual knowledge. The court stated: "Arguments to the effect that Pyramid Hill Museum and Sculpture Park `should have known,' or that it `could have known' may suffice to establish a prima facie case of negligence or of recklessness; however, as the Supreme Court has stated, proof beyond that required to show negligence or recklessness must be established in an intentional tort claim." The court concluded that, even if it assumed that the training had been inadequate, such conduct would at most constitute negligence or recklessness. *Page 6 
 {¶ 16} With respect to the second prong of Fyffe, the court concluded that Richardson had also failed to establish that Pyramid Hill had known that his injury was substantially certain to occur. The court noted that there had never been any incidents with the lifts before Richardson was injured, nor any concerns expressed by those operating the equipment. Further, the court concluded that the expert's opinion that injury had been a substantial certainty was insufficient to create a genuine issue of material fact because it did not address whether the employer hadknown that the injury was a substantial certainty.
 {¶ 17} We agree with the trial court's conclusion that Richardson failed to demonstrate a genuine issue of material fact regarding the alleged intentional tort. At most, Pyramid Hill's failure to provide training on the use of the lifts and to provide safety harnesses amounted to recklessness. Moreover, there is no evidence that the lift operators had any concern for their safety or that Pyramid Hill had any reason to anticipate an accident with substantial certainty. In sum, Richardson simply did not present the proof beyond that required to prove recklessness or negligence that is required to create a genuine issue of material fact as to an intentional tort.
 {¶ 18} The assignment of error is overruled.
 {¶ 19} The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.
Wolff, J., Brogan, J., and Fain, J., of the Second District Court of Appeals, sitting by assignment of the Chief Justice of Ohio, pursuant to Section 5(A)(3) Article IV of the Ohio Constitution. *Page 1