DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants, Lisa Billups, et al., appeal a decision from the Lucas County Court of Common Pleas granting appellees, Libbey Glass, Inc., et al., summary judgment against appellants. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} In July 2002, Lisa Billups was employed in the shipping department at the Libbey Glass factory. On July 24, 2002, she sustained injuries when she was run over by *Page 2 
a forklift at work. On February 17, 2006, Billups filed a personal injury action against Libbey Glass Inc. ("Libbey"). On December 15, 2006, Libbey filed a motion for summary judgment which was granted on June 6, 2007. Appellants now appeal setting forth the following assignments of error:
 {¶ 3} "I. The trial court failed to examine the evidence in the light most favorable to the non-moving party when considering appellee's motion for summary judgment.
 {¶ 4} "II. The court used an incorrect standard to exclude the evidence presented by appellant's expert pursuant to considering appellee's motion for summary judgment."
 {¶ 5} Civ.R. 56(C) provides that summary judgment can be granted only if (1) no genuine issue of material fact remains to be litigated; (2) it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to summary judgment as a matter of law.Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. In reviewing a ruling on a motion for summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 129.
 {¶ 6} Although Ohio workers' compensation law generally provides employees with the sole means of compensation for injuries suffered within the scope of employment, where an employer's conduct is sufficiently egregious, an employee may bring an action against that employer for intentional tort. Goodin v. Columbia Gas of Ohio, Inc.
(2000), 141 Ohio App.3d 207, 214. This exception arises from the notion that *Page 3 
where an employer's conduct is sufficiently egregious to constitute an intentional tort, the employer's act occurs outside the scope of employment. Id., at 215.
 {¶ 7} The law is well settled that in order to establish an employer intentional tort, an employee must demonstrate the following:
 {¶ 8} "(1) [knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482, 484. (Quoting Fyffe v. Jeno's,Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus.)
 {¶ 9} In their first assignment of error, appellants contend that the court erred in finding that, pursuant to Fyffe, appellants had failed to establish the elements of an intentional tort.
 {¶ 10} First, appellants contend that there was evidence that Libbey knew of a dangerous process, procedure, instrumentality or condition in its factory that would harm an employee. Specifically, Libbey knew that employees were working in close proximity with forklifts which lacked adequate safety equipment. Appellants cite as evidence of Libbey's actual knowledge of a dangerous condition the fact that the company requires forklift operators to complete a full inspection of their forklifts, with a safety checklist, *Page 4 
before beginning their shifts. Operators are required to document any problems with the forklift so that repairs can be made.
 {¶ 11} The availability and use of safety features is part of the analysis in determining whether a dangerous condition existed. Lear v.Hartzell Hardwoods, Inc., 160 Ohio App.3d 478, 2005-Ohio-1907. The use of safety features demonstrates an appreciation of the potential for danger and an effort to avoid harm to employees. Bermejo v. StoneCo,Inc., 6th Dist. No. L-05-1229, 2006-Ohio-2486. An employer simply cannot be held to know that a dangerous condition exists and that harm is substantially certain to occur when he has taken measures that would have prevented the injury altogether had they been followed.Robinson v. Icarus Indus. Constructing Painting Co. (2001),145 Ohio App.3d 256, 262.
 {¶ 12} Here, Libbey's policy of having drivers fill out a safety checklist is merely evidence that the company took precautions to prevent injuries, not that the company knew that Billups was working in close proximity with a forklift that lacked adequate safety equipment. The trial court correctly found for Libbey on the first prong of theFyffe test.
 {¶ 13} Second, appellants contend that the court erred in finding that Libbey lacked knowledge, with substantial certainty, that having employees around their forklifts would cause injury. Appellants are particularly critical of the fact that the trial court based its conclusion on the lack of prior forklift-pedestrian injuries at the factory. Appellants contend that that Billups injury was related to the installation of the automatic *Page 5 
palletizer, a device which arranges cases of merchandise on pallets. It was after the installation of the device that factory procedure changed. Such procedure, like the palletizer, had only been in operation less than three months before the accident. Therefore, appellants contend that the company's lack of history of prior accidents is immaterial.
 {¶ 14} Before Libbey employed the use of a palletizer, merchandise came down a conveyor in sealed cartons. Two employees would then place the cartons on pallets and wrap the loaded pallets with plastic. A forklift transported the pallet to an area of the factory known as Bay 400. It was there that Billups would place a label on the pallet identifying the merchandise. After installation of the palletizer, things changed. The palletizer, instead of employees, loaded cartons of merchandise onto pallets and wrapped the pallets with plastic. Forklift operators then took the loaded pallets off of the palletizer and stacked them along the wall. The palletizer was also equipped with an automatic labeling machine capable of printing and labeling the pallets for identification. On the day of Billups' accident, the labeling machine was not working. It was for that reason that Billups stood next to the palletizer and labeled the merchandise after the forklift operators had transported the sealed pallets.
 {¶ 15} Billups' accident occurred when a forklift driver, Frank Ellis, had just delivered a sealed pallet to the stack along the wall. He was returning to the palletizer to get another load. Before reaching the palletizer, he put his forklift in reverse to allow *Page 6 
another forklift to pass in front of him. Ellis did not see Billups behind him and he struck her.
 {¶ 16} The second prong of the Fyffe test requires that the plaintiff demonstrate that the employer was substantially certain that an employee would be injured if exposed to the dangerous condition. As other courts have stated, "[t]his is a difficult standard to meet." McGee v. GoodyearAtomic Corp. (1995), 103 Ohio App.3d 236, 246. As Fyffe stated at paragraph two of its syllabus, the employer's conduct must be more than negligent or reckless.
 {¶ 17} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk-something short of substantial certainty-is not intent." Id.
 {¶ 18} Under the Fyffe test, if a dangerous condition is substantially certain to injure an employee, intent is inferred. Goodin v. ColumbiaGas of Ohio, Inc., supra. "Thus, the employee need not illustrate that the employer subjectively intended to *Page 7 
`accomplish the consequences.'" Id. "What constitutes a `substantially certain' result will vary from case to case based on the facts involved." Richie v. Rogers Cartage Co. (1993), 89 Ohio App.3d 638, 644. Evidence of prior accidents involving the procedure at issue is one factor to be considered under the second prong of Fyffe. Taulbee v.Adience Inc., BMI Div. (1997), 120 Ohio App.3d 11, 20.
 {¶ 19} The company's lack of prior history with forklift-pedestrian accidents was not the only reason the court found that Libbey lacked actual knowledge that it was substantially certain that Billups would be injured. The record showed that Ellis had received forklift training and received intermittent testing. His training included instruction on backing up and using his horn while in reverse. The company had specifically warned Ellis on the day of the accident that other people would be on the warehouse floor for purposes of labeling. Billups herself had a forklift operator's license and testified that she was properly trained to perform her labeling job. Moreover, signs were posted throughout the factory warning pedestrians to watch for forklifts.
 {¶ 20} Appellants also contend that the fact that the forklift had malfunctioning back-up lights shows that Libbey should have known that injury was substantially certain to occur. There is conflicting evidence regarding whether or not Ellis's forklift had functioning brake lights. A company employee testified that he had no knowledge of malfunctioning brake lights on the forklift; Ellis was uncertain if they were operable and Billups claims they were not working. Even if appellants were able to prove that the forklift's brake lights were malfunctioning, Libbey's conduct would, at the most, amount *Page 8 
to recklessness. After reviewing the facts in their entirety, we conclude no reasonable factfinder could find that Libbey knew with substantial certainty that an injury would occur as a result of placing Billups in close proximity to a forklift.
 {¶ 21} Third, appellants contend that despite knowing of the danger of Billups being in close proximity to the forklifts and despite knowing that injury was substantially certain to occur, Libbey required Billups to remain in close proximity to the forklifts. Having found no genuine issue of material fact exists with respect to the first and second elements of Fyffe, no discussion of the third element of Fyffe is required. Appellants' first assignment of error is found not well-taken.
 {¶ 22} In their second assignment of error, appellants contend that the court erred in excluding the expert testimony of James G. Fisher. In their memorandum in opposition to Libbey's motion for summary judgment, appellants included the affidavit of James G. Fisher who claimed to be a "lift truck expert." Fisher testified that in his opinion, Libbey had created a dangerous condition when it required Billups to work in close proximity with the forklifts.
 {¶ 23} Regarding the form of affidavits submitted for purposes of opposing a motion for summary judgment, Civ.R. 56(E) provides in part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." *Page 9 
 {¶ 24} The decision to admit or exclude expert testimony lies in the sound discretion of the trial court. This court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review. Evid.R. 104(A). Evid.R. 702 addresses testimony by experts:
 {¶ 25} "A witness may testify as an expert if all of the following apply:
 {¶ 26} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 27} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 28} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * * "
 {¶ 29} That rule, however, must be read in conjunction with Evid.R. 703 and 705 to determine whether or not an expert witness's affidavit suffices for the purpose of opposing an adequately supported motion for summary judgment. Nu-Trend Homes, Inc. v. Law Offices of DeLibera, Lyons Bibbo, 10th Dist. No. 01AP-1137, 2003-Ohio-1633, citing C.R. WithemEnterprises v. Maley, 5th Dist. No. 01 CA 54, 2002-Ohio-5056. Evid.R. 703 provides, "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Evid.R. 705 allows the expert to "testify in terms of opinion or *Page 10 
inference and give his reasons therefor after disclosure of the underlying facts or data * * * in response to a hypothetical question or otherwise."
 {¶ 30} The record in this case shows that Fisher based at least part of his opinion on materials not included in the record. As such, many of his conclusions were unsupported by fact. It is well settled that:
 {¶ 31} "[I]t is improper for an expert's affidavit to set forth conclusory statements and legal conclusions without sufficient supporting facts. Wall v. Firelands Radiology, Inc.,106 Ohio App.3d 313, 335-336, Davis v. Schindler Elevator Corp. (1994),98 Ohio App.3d 18, 21, Evid.R. 704; Evid.R. 705. Letting expert witnesses make these types of unsupported conclusions creates the possibility, if not the probability, of misinterpretation of the legal standard by the witness and the factfinder's inability to perceive this misinterpretation."Douglass v. Salem Community Hosp., 153 Ohio App.3d 350, 2003-Ohio-4006, citing Gannett v. Booher (1983), 12 Ohio App.3d 49, 53.
 {¶ 32} In rejecting Fisher's affidavit, the trial court also noted that Fisher had also based part of his opinion on a claimed fact that was contrary to the record. Specifically, Fisher alleged that Billups and Ellis had not been adequately trained in their job duties when, in fact, both Billups and Ellis testified that they were adequately trained. For this reason as well as the fact that many of Fisher's other conclusions were based on facts outside of the record, we conclude that the trial court did not abuse its discretion in disregarding Fisher's affidavit. Appellants' second assignment of error is found not well-taken. *Page 11 
 {¶ 33} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
 Arlene Singer, J., William J. Skow, J., Thomas J. Osowik, J. CONCUR. *Page 1