MURRAY, Appellant,

v.

EAST OHIO GAS COMPANY, Appellee.

[Cite as *Murray v. E. Ohio Gas Co.* (1996), 111 Ohio App.3d 57.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95 C.A. 20.

Decided May 20, 1996.

58

*Alan J. Matavich,* for appellant.

*Charles L. Richards* and *J. Michael Zontini,* for appellee.

GENE DONOFRIO, Judge.

Plaintiff-appellant, Helen J. Murray, appeals from an order of the Mahoning County Common Pleas Court granting summary judgment in favor of defendant-appellee, East Ohio Gas Company, in this intentional tort action.

Appellant had been employed by appellee since 1984. In 1987, appellant bid into a position in gas operations, and she thereafter became a Field Operator C in 1991 and Field Operator B in early 1992.

As part of appellant's duties as an Operator C, appellant checked regulators and charts, performed odorant tests, and spread a chemical weed killer, Ureabor.

In the latter part of 1991, appellant began experiencing symptoms that included a red rash, difficulty breathing, heart palpitations, headaches, fatigue, and swelling on the side of her neck. Appellant was off sick from January 1992 through March 2, 1992. Appellant's illness was subsequently diagnosed as sarcoidosis, with the cause unknown.

While appellant was off sick, she advanced to the position of Field Operator B. In February 1992, appellant requested a medical disability transfer. Appellee subsequently arranged to have appellant examined by one of its company doctors, Dr. Benjamin Hayek. A letter from Dr. Hayek to appellee's personnel director, Adrienne Richards, dated April 21, 1992, recommended that appellant be returned to work on the condition that she avoid "fumes which will exacerbate the obstructive component and may complicate or exacerbate her existent disease." In addition, in another letter dated May 5, 1992, Dr. Hayek recommended that appellant be returned to her regular duties, it appearing to him that she would not, in her regular duties, "be exposed in any chronic fashion to toxic fumes nor [would] she be working in any enclosed area associated with exhaust fumes or other vapors." Dr. Hayek ultimately recommended that appellant be returned to her regular duties. Appellant's application for a medical disability transfer was thereafter denied.

Appellant resumed her regular duties as an Operator B in May 1992. As part of her duties as an Operator B, appellant was required to perform an odorant test, done on a weekly or monthly basis, on the tanks at various stations. Natural gas itself has no odor. An industry-wide practice is to mix a chemical with the natural gas so that the gas can be detected in the event of a leak. Appellee used the chemical thiophene, although other gas companies use the chemical methylmercaptan. The odorant test performed by appellant involved the sniffing of the gas through a tube in order to test the odor.

Appellant complained of a strong odor in some of the places where she was required to perform the odorant test, especially the Petersburg station, to one of her supervisors, Tom Lawson. She testified during her deposition that she spoke with Lawson about the odor prior to going on sick leave in January 1992. Further, there was evidence that she told Lawson of the strong odor and of various physical symptoms she was having, i.e., difficulty breathing and problems with her eyes, after resuming her regular duties in May 1992. Further, there was evidence that, in December 1992, appellant was rushed to the emergency room due to difficulty breathing and a racing heart after going to the Petersburg station. Appellant testified that she also complained to Paul Goble about the strong odor and about a leak of the chemical thiophene at the Petersburg station.

Appellant became sick again in January 1993. She was subsequently diagnosed with injuries to her lymphatic, immune, metabolic and intestinal systems and to her spleen, lungs, thyroid, liver, kidneys and heart, which her doctor subsequently labeled multiple chemical sensitivity. In April 1993, appellant was granted a medical disability transfer.

On February 10, 1993, appellant filed an intentional tort action against appellee. In her complaint, appellant alleged that she had been injured by exposure to certain chemicals, including thiophene and Ureabor, in the course of her employment with appellee. In her complaint, appellant alleged two separate injuries: (1) damage to her lymphatic, immune, metabolic and intestinal systems and to her spleen, lungs, thyroid and liver (multiple chemical sensitivity); and (2) sarcoidosis and/or aggravation of sarcoidosis. The trial court subsequently granted appellant's motion to strike the words "sarcoidosis and/or" from her complaint. Thus, appellant sought damages for multiple chemical sensitivity and aggravation of sarcoidosis.

On January 31, 1995, the trial court granted appellee's motion for summary judgment on appellant's intentional tort claim. The trial court found that appellant had presented no proof sufficient to establish that appellee knew that a process, procedure or instrumentality within its business operation was dangerous in and of itself or that involving appellant in the process would be substantially certain to cause her harm, since the problems experienced by her were unique

to her own particular sensitivities and were not experienced by others doing the same work. Further, the trial court found that since sarcoidosis was appellant's original diagnosis and since there was no evidence that it was caused by exposure to chemical agents, appellee could not be found to have knowingly required appellant to perform a dangerous task by allowing her to remain a field operator after she had requested a medical disability transfer in February 1992.

After the trial court granted summary judgment in favor of appellee, appellant filed the instant appeal.

■ Appellant has listed two assignments of error. The first is:

"The trial court erred in granting summary judgment in favor of appellee on appellant's intentional tort claim."

Appellant cites *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, and states that in order to establish intent in an intentional tort claim against an employer, an employee must prove "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Id.* at paragraph one of the syllabus.

Appellant first argues that appellee had knowledge of a dangerous process, procedure, instrumentality or condition within its business operation. Appellant argues that the Material Data Safety Sheet issued by the manufacturer of thiophene, which appellee acknowledged that it possessed and relied on, indicates that exposure to thiophene may cause headache and nausea when its vapors are breathed in high concentration, that thiophene is a severe irritant to the eyes and that high concentrations may temporarily desensitize the sense of smell.

Appellant further points to the deposition testimony and affidavit of her expert witness, Dr. John Yemma. Dr. Yemma opined that exposure to high concentrations of thiophene for periods of ten to fifteen minutes is dangerous and harmful. Dr. Yemma further opined that the method used by appellee to test the odorant, *i.e.,* breathing the thiophene and natural gas through a hose, was unsafe and that there are other electronic methods available to perform odorant tests on natural gas. Appellant once again refers to the Material Data Safety Sheet for thiophene, which advises, at page 4, against breathing in the vapors, that it be used with adequate ventilation, that it be kept in tightly closed containers, and that protective gear should be used when handling it.

Second, appellant argues that she submitted evidence that appellee had knowledge that harm to appellant would be a substantial certainty.

Appellant argues that she received no training and no safety equipment. Appellant further argues that there was evidence that the Petersburg station had no wash facilities to remove the chemical from the skin of employees who had to use the leaking valve. She further argues that she told her supervisors about the strong odor at the Petersburg station, that appellee had the Material Data Safety Sheet for thiophene and that Tom Lawson had witnessed appellant's fatigue and short-windedness. Further, appellant argues that there was evidence that a number of doctors had cautioned against appellant's exposure to chemicals, fumes and vapors. She further argues that she complained to Lawson of headaches, dizziness, racing heart and skin rash.

Third, appellant argues that there was evidence that appellee, under such circumstances and with such knowledge, required appellant to continue to perform the dangerous task.

Appellant argues that when appellee denied her first request for a medical disability transfer in May 1992, it sent her back to perform her duties as a Field Operator B despite the warnings of doctors advising against exposure to chemical fumes or vapors.

Appellant cites *Tulloh v. Goodyear Atomic Corp.* (1994), 93 Ohio App.3d 740, 639 N.E.2d 1203. In that case, the plaintiff was employed as a uranium handler and was injured when exposed to a uranium compound. The plaintiff later returned to work without restrictions, but, ten months later, presented a letter from his doctor stating that he should not work in areas with potential exposure to the uranium compound. The employer's doctor recommended that the plaintiff be returned to work without restrictions. The plaintiff subsequently filed a complaint alleging intentional tort in that his subsequent exposure to the compound aggravated his prior injuries or caused new ones. The court of appeals affirmed a verdict for the plaintiff.

During the summary judgment proceedings below, the trial court had before it the April 21 and May 5, 1992 letters from Dr. Hayek to appellee. Dr. Hayek recommended in those letters that appellant be returned to her duties under the condition that she avoid fumes and abrupt changes in temperature. The letters also indicate that Dr. Hayek believed that appellant would not be exposed to toxic fumes or working in any enclosed area associated with exhaust fumes or other vapors. The record also reflects that the trial court had before it a copy of the Material Data Safety Sheet for thiophene and that the trial court further had before it proof regarding the conditions to which appellant was exposed at the Petersburg station.

It is also clear from the record that appellee had these documents and was aware of their contents when it refused appellant's first request for a medical disability transfer.

We find that the documents named above, among other information in the record, created issues of material fact with regard to whether appellee had knowledge of a dangerous process or procedure within its operations, whether appellee knew that harm to appellant was a substantial certainty and whether appellee, with such knowledge, required appellant to continue performing the task at issue. Where issues of material fact are present in a case, summary judgment is inappropriate. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095; Civ.R. 56(C).

The first assignment of error is with merit.

In the second assignment of error, appellant states:

"The trial court applied the incorrect standard in granting summary judgment in favor of appellee."

The trial court stated in its judgment entry that "Plaintiff is forced to produce evidence in response to a Motion for Summary Judgment sufficient to demonstrate that she can meet her burden of proof at trial and sustain the elements of this cause of action as set forth under *Fyffe v. Jeno's, et al.*"

While the trial court may have referred to the burden of proof in its judgment entry, we find from a reading of the entire entry that the trial court used a proper standard.

The second assignment of error is without merit.

The judgment of the trial court is hereby reversed, and this cause is remanded for further proceedings according to law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

O'NEILL, P.J., and COX, J., concur.